IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACKSON HARMON ENTERPRISES, LLC, A Nebraska Limited Liability Company;<br><br>Plaintiff,<br><br>vs.<br><br>INSURANCE AUTO AUCTIONS, INC., An Illinois Corporation;<br><br>Defendant. | 8:13CV3194<br><br>**MEMORANDUM AND ORDER** |

Pending before me are the motion to compel filed by the plaintiff, Jackson Harmon Enterprises, LLC d/b/a Midwest Towing ("Midwest"), ([Filing No. 28](#)), and the motion for protective order filed by defendant, Insurance Auto Auctions, Inc, ("IAA"), ([Filing No. 32](#)). The motions are interrelated, with overlapping briefing and evidence offered by the parties. The motion to compel and the motion for protective order will be granted in part and denied in part as set forth below.

STATEMENT OF FACTS

The plaintiff's complaint alleges a right to recover damages for breach of contract or, as an alternative, unjust enrichment. Plaintiff Midwest is a towing company which contracted to tow vehicles for IAA, an auto salvage company, at IAA's Omaha, Nebraska branch location. Midwest alleges IAA breached the contract by failing to pay "second stop" or "two stop" charges owed under section 4.2 of the parties' Towing Services Agreement. Section 4.2 states: "All additional charges such as two stops, waiting time, and dry runs not authorized by IAA will be absorbed by Contractor and not reimbursed by IAA." ([Filing No. 39-1, at CM/ECF p. 5](#)). Midwest claims IAA violated the contract by failing to pay an additional $25.00 charge for 8,994 two stop towing assignments completed by Midwest at IAA's request between July 1, 2010 to December 5, 2012.

IAA claims Midwest is not entitled to recover these additional charges because they were never authorized by IAA.

The plaintiff served written discovery and a 30(b)(6) deposition notice to: 1) identify IAA locations where towers are required to deliver vehicles to multiple locations or to deliver a vehicle or trailer at one location and the related paper work to a separate location, and 2) obtain copies of all documents evidencing two stop fees paid for such transactions, the towers' contracts in such transactions, and the identity of the towers involved in in the transactions. Specifically, Plaintiff's motion to compel seeks an order overruling the defendant's objections to the following discovery requests:

> INTERROGATORY NO. 8: Please identify all lawsuits that INSURANCE AUTO AUCTIONS, INC. has been involved in as a party during the last 10 years.
>
>> ANSWER: Defendant objects to Interrogatory No. 8 on the grounds that it seeks information that is overbroad, unduly burdensome, not sufficiently limited in time or scope, irrelevant and designed to harass and, therefore, it is not reasonably calculated to lead to the discovery of admissible evidence.
>
> INTERROGATORY NO. 12: Identify all Second Stop Charges that you have paid any tow company, other than Plaintiff, from January 1, 2008 to October 24, 2013.
>
>> ANSWER: Objection. This interrogatory is unduly burdensome, insufficiently limited in time and scope, and it seeks information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence.
>
> REQUEST NO. 5: Without limiting the generality of the foregoing, all files and documents of INSURANCE AUTO AUCTIONS, INC., created or received from January 1, 2010 to September 17, 2013, which refer to, evidence, or relate to any one or more of the following:
>
>> . . .
>
>> d) Without limiting the foregoing, 2 stop charges, as defined in the Complaint;

>ANSWER: Objection. This Request and its subparts are overbroad, vague, ambiguous, and unduly burdensome with respect to the term "relate to." Defendant further objects because this Request and its subparts seek information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this Request and its subparts seek information protected from disclosure under the attorney-client privilege and/or work product doctrine.

REQUEST NO. 9: Without limiting the generality of the foregoing, all documents evidencing payment of "2 Stop Charges" in 2009 and 2010 to Towing Companies other than Midwest Towing.

>RESPONSE: Objection. This Request is overbroad, unduly burdensome, and it seeks information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 10: Without limiting the generality of the foregoing, all documents referring, relating, or evidencing, or comprising any IAA policy concerning payments of "2 Stop Charges" or incurring "2 Stop Charges" generated from January 1st, 2009 to October 24th, 2013.

>RESPONSE: Objection. This Request is overbroad, unduly burdensome, and it seeks information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

(Filing No. 29-3; Filing No. 29-5). Plaintiff's 30(b)(6) Notice likewise requests:

- a) The address of all branch locations of Defendant Insurance Auto Auctions, Inc. ("IAA"), where a towing company has delivered vehicles and/or trailers on the same load to multiple drop off lots for IAA, during the period commencing January 1, 2010 and ending May 12, 2014;

- b) The address of all branch locations of IAA, where a towing company has delivered vehicles and/or trailers to one drop off location for IAA, and the related paper work for each vehicle and/or trailer dropped off is delivered to another place, during the period commencing January 1, 2010 and ending May 12, 2014;

- c) The identification and authentication of all records of IAA locations described in subparagraph a above that refer to, relate to, or evidence 2 stop charges paid to towing companies for delivering vehicles

3

<ul>
<li>and/or trailers on the same load to multiple drop off lots for IAA, during the period commencing January 1, 2010 and ending May 12, 2014;</li>
</ul>

d) The identification and authentication of all records of IAA locations described in subparagraph b above that refer to, relate to, or evidence 2 stop charges paid to towing companies for delivering vehicles and/or trailers to one drop off location, and the related paper work for each vehicle and/or trailer dropped off to another location for IAA, during the period commencing January 1, 2010 and ending May 12, 2014;

e) The identification of all towing companies that delivered vehicles and/or trailers on the same load to multiple drop off lots for IAA during the period commencing January 1, 2010 and ending May 12, 2014; the terms and conditions of the contracts that such towing companies had with IAA during said period, and the authentication of all such contracts;

f) The identification of all towing companies that delivered vehicles and/or trailers to one drop off location, and the related paper work for the vehicle and/or trailer dropped off to another location for IAA, during the period commencing January 1, 2010 and ending May 12, 2014; the terms and conditions of the contracts that such towing companies had with IAA during said period, and the authentication of such contracts;

g) The payment of 2 stop charges to each and every towing company that IAA has done business with from January 1, 2010 to the present.

h) The identification and authentication of any IAA written plan or procedure relating to of [sic] 2 stop charges;

i) The terms and condition of any oral IAA plan or procedure relating to 2 stop charges;

j) IAA's understanding of the service for which a 2 stop charge is payable to Midwest under its agreement with IAA; and

j)[sic] The factual basis for IAA's supposed waiver defense.

([Filing No. 24, at CM/ECF pp. 3-4](#)). The 30(b)(6) notice lists the following documents to be produced for the deposition:

> REQUEST NO. 1: All files and documents of Defendant Insurance Auto Auctions, Inc. ("IAA"), created or received from January 1, 2010 to September 17, 2013, which refer to, evidence, or relate to 2 stop charges, as defined in the Complaint, including tow bills and invoices evidencing such charges, and contracts with towing companies that reference such charges.
>
> REQUEST NO. 2 Without limiting the generality of the foregoing, all documents evidencing payment of "2 Stop Charges" in 2009 and 2010 to towing companies other than Midwest Towing.
>
> REQUEST NO. 3: Without limiting the generality of the foregoing, all documents referring, relating, or evidencing, or comprising any IAA policy concerning payments of "2 Stop Charges" or incurring "2 Stop Charges" generated from January 1st, 2009 to October 24th, 2013.
>
> REQUEST NO. 4: All documents evidencing IAA's alleged waiver defense.

(Filing No. 24, at CM/ECF p. 5).

In an attempt to resolve the current discovery dispute, Midwest agreed to limit interrogatory 12, and production requests 5(d), 9, and 10 (at this time) to only those IAA locations where either i) vehicles and/or trailers on the same load are delivered to multiple drop off lots, or ii) the vehicle and/or trailer is delivered to one location and the related paper work for each vehicle and/or trailer is delivered to another location. (Filing No. 29-11). It also agreed to limit interrogatory 8 to lawsuits within the past 10 years to which IAA was a party that either referred in any way to 2 stop charges, or involved a dispute with a tower. (Filing No. 29-11). Even with this limitation, IAA objects to producing the documents requested.

The defendant has 175 locations nationwide, 900 vendors, and towing agreements with 521 companies. For each vehicle towed, IAA creates a stock file. Between 1.3 and 1.5 million stock files are generated by the company every year. At each location, the stock files are indexed and maintained by the identity of the vehicle towed, and not by the pickup and delivery route, the requirements of the towing job, or the amount paid. Due to the specific and unique towing needs at each of IAA's 175 locations, IAA's local

branch managers are vested with discretion to lease property to meet each location's needs, and to either authorize or refuse additional two stop charges. (Filing No. 34-1; Filing No. 64-1, at CM/ECF p. 2, ¶ 4). IAA does not maintain a centralized database containing the real estate records for each location, records of whether a location has or had multiple vehicle drop sites, or the current names and addresses of present and past branch managers for each of the 175 branch locations.

As a result, providing a complete response to the Plaintiff's discovery requests, even as limited by the plaintiff, would require IAA to contact each of its 175 branch locations and request the name and current contact information of that location's branch managers for the past four and a half years. An email solicitation for information could be used for contacting current managers, but not any past managers who worked during the time period at issue. (Filing No. 34-1; Filing No. 45, at CM/ECF pp. 228-229). Once the managers were identified, the defendant would need to interview each of them to identify the locations which have, or previously had, multiple drop sites during the requested time frame. While multiple drop site locations are unique, and defendant's 30(b)(6) witness could recall one such location (Long Island, New York), he was unable to identify all multiple drop site locations for the time frame requested. Once the multi-site locations are identified, the defendant would need to ask the past and present branch managers to explain how they handled two stop charges. (Filing No. 34-1; Filing No. 45, at CM/ECF pp. 227-228). And to retrieve the requested documents, for each multi-stop location, the defendant would need to sift through the vehicle stock files and determine which documents reflect two stop tows and whether a $25 additional charge was paid. (Filing No. 34-1; Filing No. 45, at CM/ECF pp. 230-231).

The defendant estimates this process would take nine months to complete. (Filing No. 34-1; Filing No. 45, at CM/ECF p. 230). Although the defendant does not explain how the nine-month estimate was calculated, based on the explanation of the work itself,

the court nonetheless finds the work required to produce a complete discovery response would be onerous and very time consuming.

IAA has provided no evidence explaining how responding to Interrogatory 8, as modified with the agreement of Plaintiff's counsel, will impose an undue burden on the defendant.

LEGAL ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). In the context of discovery, discovery is relevant if the information requested "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). However, a "court must limit the frequency or extent of discovery otherwise allowed" when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)( 2)(C)(iii). See also WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1038 (8th Cir. 2011)

"Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). The parties' lawsuit focuses on the meaning and application of section 4.2 of the Towing Agreement which states: "All additional charges such as two stops, waiting time, and dry runs not authorized by IAA will be absorbed by Contractor and not reimbursed by IAA." (Filing No. 39-1, at CM/ECF p. 5). Midwest claims "[t]his language unambiguously provides that for a 2 stop fee to be payable, the second stop must be approved, not the 2 stop charge," and "this court should so determine as a matter

of law." (Filing No. 38, at CM/ECF p. 15).  Midwest further argues that if the court finds the additional stop provisions are ambiguous, "the court must . . .determine the actual intent of the contracting parties" by reviewing the "facts and circumstances which motivated each party to enter the contract," "the nature and subject matter of the contract," (Filing No. 51, at CM/ECF p. 16), and "IAA's prior course of dealing and its understanding of usages of trade. . ." (Filing No. 51, at CM/ECF p. 21).

IAA also asserts section 4.2 is unambiguous, (Filing No. 63, at CM/ECF p. 8), stating the term clearly means additional charges would not be paid unless they were pre-approved.  Citing Midwest's "Responses to Request for Proposal," IAA states Midwest knew it would receive payment for only pre-authorized charges, and IAA in therefore entitled to judgment as a matter of law. (Filing No. 34-2, at CM/ECF p. 13, ¶ 4.14).  IAA further argues:

> Even if the Court concludes that the meaning of "second stop" charges is ambiguous, the only relevant inquiry still concerns what those in charge of the Omaha branch thought compensable "second stops" were, not the understanding of branch managers operating in approximately 175 different markets, with 521 individual towing company contracts tailored to the unique circumstances of each market.

(Filing No. 33, at CM/ECF p. 7).  IAA has provided the information requested by the plaintiff for the Omaha branch location, and states nothing more should be required.

Under Nebraska law, "[a] written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction," and a court simply must give effect to that language." Home Instead, Inc. v. Florance, 721 F.3d 494, 498 (8th Cir. 2013).  Under such circumstances, information explaining how the contracts terms were historically interpreted or modified by IAA, its local branch managers, and other towers, particularly towers at locations other than Omaha, is of little or no relevance.  If the "contract is ambiguous, the meaning of its terms is a matter of fact to be determined in the same manner as other questions of fact," (Home Instead, 721 F.3d at

8

498), including consideration of circumstantial evidence explaining the parties' past understanding and application of the contract provisions.

Midwest and IAA both claim the contract is unambiguous. The fact that both sides state the terms are unambiguous, but do not agree to the meaning, does not convert an unambiguous contract into an ambiguous one. "Where both parties claim a contract unambiguously supports their respective positions, the court must determine whether the contract truly is unambiguous." Home Instead, Inc. v. Florance, 721 F.3d 494, 498 (8th Cir. 2013). This question is best left to the presiding judge on summary judgment.

For the purposes of this motion to compel, the undersigned magistrate judge will assume the information requested by the plaintiff "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The question is whether complying with the discovery would be unduly burdensome.

The defendant has explained it confer substantial discretion on local managers to address location-by-location differences in towing needs and assets. Thus, the court questions whether information on the terms and enforcement of a Towing Agreement in another location would be relevant to a breach of contract action arising from the Omaha location. All Omaha records have already been provided. The plaintiff claims IAA owes Midwest at least $224,850.00 for these unpaid two stop charges, (Filing No. 1-1, at CM/ECF p. 5, ¶ 7); a significant amount of money, but not enough to justify spending months searching through documents to locate information which is marginally relevant, is at all, to proving the plaintiff's claims. On balance, the court finds the defendants have met their burden of proving that the scope of the discovery requested by the plaintiff in Interrogatory 12, Production Request 5(d), 9, and 10, Rule 30(b)(6) notice paragraphs (a) through (g) and request for documents 1, 2, and 3, is overbroad, and responding would be unduly burdensome.

The court finds, however, that the defendant will be required to respond to interrogatory 8 as modified by the plaintiff. Information regarding past lawsuits for recovery of two stop charges may reveal the defendant's position and past judicial rulings in other similar actions. This information would likely lead to the discovery of relevant information for this case. The defendant has not shown that collecting the information requested in the modified interrogatory 8 would be unduly burdensome.

Likewise, IAA has failed to show the alleged burden associated with complying with 30(b)(6) document request 4, and testimony and providing 30(b)(6) testimony regarding:

- h) identification and authentication of any IAA written plan or procedure relating to 2 stop charges;

- i) The terms and condition of any oral IAA plan or procedure relating to 2 stop charges;

- j) IAA's understanding of the service for which a 2 stop charge is payable to Midwest under its agreement with IAA; and

- j)[sic] The factual basis for IAA's supposed waiver defense.

IAA's motion for protective order on these issues will be denied.

Accordingly,

IT IS ORDERED:

A. The plaintiff's motion to compel, ([Filing No. 28](Filing No. 28)), is granted in part and denied in part as follows:

1) As to Interrogatory 8, the defendant shall identify all lawsuits that IAA has been involved in within the past 10 years that either referred in any way to 2 stop charges, or involved a dispute with a tower.

10

    2)    In all other respects, the plaintiff's motion to compel is denied.

B.    The defendant's motion for protective order, (Filing No. 32), is granted in part and denied in part as follows:

    1)    The defendant shall produce the documents requested in Request No. 4 of the plaintiff's 30(b)(6) deposition notice;

    2)    The defendant shall answer deposition questions on the following topics outlined in the plaintiff's 30(b)(6) deposition notice:

        h)    The identification and authentication of any IAA written plan or procedure relating to of [sic] 2 stop charges;

        i)    The terms and condition of any oral IAA plan or procedure relating to 2 stop charges;

        j)    IAA's understanding of the service for which a 2 stop charge is payable to Midwest under its agreement with IAA; and

        j)(sic)  The factual basis for IAA's supposed waiver defense.

    3)    In all other respects, the defendant's motion for a protective order regarding plaintiff's 30(b)(6) deposition notice is granted.

August 4, 2014.

                          BY THE COURT:

                          *s/ Cheryl R. Zwart*
                          United States Magistrate Judge