IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACKSON HARMON ENTERPRISES, LLC, d/b/a MIDWEST TOWING, a Nebraska Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>INSURANCE AUTO AUCTIONS, INC., an Illinois Corporation,<br><br>Defendant. | 8:13CV3194<br><br>MEMORANDUM AND ORDER |

  This diversity case is before court on cross-motions for summary judgment. The plaintiff, Jackson Harmon Enterprises, LLC, doing business as Midwest Towing ("Midwest"), seeks to recover damages from the defendant, Insurance Auto Auctions, Inc. ("IAA"), for breach of contract or, in the alternative, unjust enrichment.[1] Both motions will be denied.

  IAA is an Illinois corporation engaged in the business of storing automobiles in Douglas County, Nebraska. IAA provides a forum for insurance companies and other vehicle providers to dispose of total loss, theft-recovered, or dealer trade-in vehicles at auction. Upon assignment from a provider, IAA utilizes towers to pick up and deliver vehicles that are assigned to IAA by various vehicle providers. Midwest Towing is a Nebraska limited liability company engaged in the business of towing vehicles in Douglas County, Nebraska.

---

[1] Midwest seeks a partial summary judgment in the amount of $148,625, with the amount of additional damages associated with early termination of the contract to be determined at trial.

On March 8, 2010, Midwest and IAA entered into a "Towing Services Agreement," pursuant to which Midwest agreed "to tow vehicles for IAA ... at the [mileage zone] rates set forth in the [attached] Towing Rate Sheet" (Complaint Ex. A (filing 1-1), ¶ 4.1). The Towing Services Agreement specified: "All additional charges such as two stops, waiting time, and dry runs not authorized by IAA will be absorbed by [Midwest] and not reimbursed by IAA" (*id.*, ¶ 4.2). Regarding such additional charges, the Towing Rate Sheet provided:

> Additional Charges
>
>     1) Dry Runs –
>
>         > Will be paid at 35% of the applicable zone rate. Dry runs must be pre-approved by Branch Manager.
>
>     2) Wait Time –
>
>         > IAA will not pay for wait time for the first ½ hour. After 30 minutes, wait time will be paid at $25.00 per ½ hour increments, if approved by the Branch Manager.
>
>     3) Added Stops –
>
>         > IAA will pay $25.00 for additional stops, if approved by the Branch Manager.

(*Id.,* p. 12; filing 89-1, p. 17).[2]

Midwest alleges IAA breached the parties' agreement by not paying a "two stops" charge after Midwest either (a) delivered one or more vehicles from a single load to IAA's lot located on 52nd Street in Omaha, Nebraska, and the balance of the

---

[2] IAA and Midwest amended the Towing Rate Sheet effective October 1, 2012, but the "Additional Charges" language for "Dry Runs," "Wait Time" and "Added Stops" was not changed.

vehicles to a different IAA lot[3] or (b) delivered vehicles in a single load to a location other than the 52nd Street lot and then delivered the tow bill (*i.e.*, paperwork) to 52nd Street. Midwest alleges that these types of towing assignments occurred on at least 8,994 occasions since July 2010,[4] but in its motion for partial summary judgment Midwest claims only 5,945 "two stops" charges.

The first time Midwest requested payment from IAA for deliveries to lots other than 52nd Street was in early 2011. Midwest's manager, Jeff Jackson, told IAA's branch manager, John Williams, that "the change of having to drop cars all over off the same load is starting to really cost me money," and he asked, "will IAA do anything about the fact that we're having do this?" Williams denied the request and responded that IAA's area manager, Dawn Kors, would not approve additional payments. Jackson again approached Williams in mid-2011, and Williams responded that he could not approve payment of additional compensation. Jackson also spoke directly with Kors in October 2011, and she told him the additional compensation Midwest was requesting was "not in the budget." She offered to put the Towing Services Agreement back up for a request for proposals (RFP), but Midwest did not make such a request. Midwest continued to provide towing services to IAA under the Towing Services Agreement through July 26, 2013.[5]

---

[3] In order to deliver vehicles from a single load to multiple lots, Midwest had to unload and reload depending on the insurance provider. Delivery of vehicles from the same load to multiple lots sometimes required that Midwest unload some vehicles that were to remain at that lot, then reload vehicles and take them to other lots for delivery.

[4] Beginning in July 2010, IAA requested that Midwest deliver all State Farm insured vehicles to lots than the 52nd Street lot.

[5] The term of the Towing Services Agreement was 2 years, but the Agreement provided that "IAA may terminate this Agreement at any time, with or without cause upon thirty (30) days prior written notice" (Complaint Ex. A, ¶ 13). On or about June 28, 2013, IAA notified Midwest in writing of IAA's intent to terminate the contract, effective July 27, 2013. Midwest complains such notice did not satisfy the

IAA claims Kors told Jackson that dropping vehicles at different locations was not a "two stops" charge. Midwest denies Kors made this statement. Midwest claims Jackson spoke to IAA's transportation manager, Greg Santilli, in November 2011, and was told that dropping vehicles from a single load to different locations warranted a "two stops" charge, which was how Jackson realized for the first time that Midwest could demand additional compensation under the terms of the existing contract. IAA denies Santilli made such a statement.

A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 422 (Neb. 2010). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id*. However, a contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. The meaning of an ambiguous contract is generally a question of fact. *Id*. A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. *Id*. at 423.

Both parties contend the contract is unambiguous, but their interpretations are quite different. Basically, IAA says its branch manager was required to approve all charges for additional stops, while Midwest says IAA's branch manager only needed to authorize the additional stops, such as by requesting that vehicles be delivered to lots other than 52nd Street.

The court finds that paragraph 4.2 of the Towing Services Agreement and the "Added Stops" language in the "Additional Charges" section of the Towing Rate

---

30-day requirement, and it seeks to recover lost profits and other consequential damages for the balance of the contract term. IAA denies that Midwest suffered any damages, but this cannot be determined at this time.

Sheet are ambiguous, and that there are genuine issues of material fact in the parol evidence which has been presented by the parties. These issues are identified in the parties' briefs and require no additional discussion by the court.

Because this matter will be tried to the court sitting without a jury, and because extensive evidence, including several depositions, has already been presented to and reviewed by the court in connection with the cross-motions for summary judgment, the parties are urged to cooperate in developing a "streamlined" trial plan which will allow each of them to make an adequate record without prolonged live testimony.

Accordingly,

IT IS ORDERED:

1. Plaintiff's motion for partial summary judgment (filing 84) is denied.

2. Defendant's motion for summary judgment (filing 88) is denied.

3. This matter is referred to Magistrate Judge Zwart for progression.

DATED this 17th day of December, 2014.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge