IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACKSON HARMON ENTERPRISES, LLC, A Nebraska Limited Liability Company; | **8:13CV3194** |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| vs. | |
| INSURANCE AUTO AUCTIONS, INC., An Illinois Corporation; | |
| Defendant. | |

On August 4, 2014, the court entered a memorandum and order ruling on a motion to compel filed by the plaintiff and a motion for protective order filed by the defendant. (Filing No. 67).  Pending before me is the plaintiff's second motion to compel, along with its request to extend the discovery deadlines, (Filing No. 78), and the defendant's second motion for protective order.  (Filing No. 94).  These second motions address topics that were not raised in the parties' prior motions:  Neither party claims the court's prior order was violated.

For the reasons discussed below, the plaintiff's motion to compel and to continue the discovery deadlines, (Filing No. 78), will be denied.  And the defendant's motion for an amended protective order, (Filing No. 94), will be granted.

ANALYSIS

The court's prior discovery order, (Filing No. 67), outlined the allegations underlying this case.  That discussion will not be repeated herein.

1.      Procedural Background.

The plaintiff's complaint was filed in state court on October 24, 2013.   The plaintiff served discovery on the defendant the same day.   (Filing No. 29-1, Filing No. 29-1).   The plaintiff's complaint was removed to this forum on November 20, 2013. (Filing No. 1).   On January 17, 2014, the parties completed a Rule 26(f) Report and jointly requested a written discovery deadline of May 15, 2014, and a deposition deadline of August 1, 2014.   (Filing No. 12, at CM/ECF p. 8, ¶ E).   The court adopted these suggestions, entering a final progression schedule on January 31, 2014 which ordered:

> The deadline for completing written discovery under Rules 33 through 36 of the Federal Rules of Civil Procedure is May 15, 2014. Motions to compel Rule 33 through 36 discovery must be filed by May 1, 2014.
>
> . . .
>
> The deposition deadline is August 1, 2014.

(Filing No. 14, at CM/ECF p. 14, ¶¶ 6, 9).

The defendant's initial discovery responses, served in February of 2014, (Filing No. 29-3; Filing No. 29-5; Filing No. 29-6)), raised objections but provided some of the requested information.   The plaintiff was dissatisfied with the defendant's responses.   As applied to this motion, the plaintiff asserted it was entitled to a response to Interrogatory 13, and that defendant's responses to Requests 5 and 6 were unacceptable.   In a letter dated February 24, 2014, Plaintiff's counsel warned:   "Please consider this our final request for compliance with the discovery requirements imposed by the Federal Rules, and our final attempt to resolve this matter without court involvement.   If you do not supplement your responses within 7 days, we shall file a motion to compel."   (Filing No. 29-9).

As applied to the pending motion to compel, Interrogatory 13 and Requests 5 and 6 demanded "Hauling Transfer" information and related documents, documentation of any business transacted between Plaintiff and Defendant at any time within the past 5 years, and all tow bills from Defendant to Plaintiff from January 1, 2010 to September 17, 2013. By letter dated March 4, 2014, the defendant responded that a request to identify all vehicles showing "hauling transfers" for the referenced dates and for all of IAA's locations was irrelevant and unduly burdensome. The defendant confirmed it had already produced the information for lot-to-lot transfers involving Midwest Towing. Defense counsel further noted, "We have asked our client to further address this interrogatory. As such, we are presently determining *whether **or not*** any further documents are responsive to this interrogatory, though further production, ***if any***, *will be limited to hauling transfers for the Omaha branch* from March 8, 2010 to July 31, 2013." (Filing No. 29-10) (emphasis added). The letter from defense counsel did not promise production of further documents, nor did it promise that any further production would include every document the plaintiff requested—even as to hauling transfers for the Omaha branch.

On April 11, 2014, the defendant supplemented its discovery responses as follows:

INTERROGATORY NO. 13:   Identify all vehicles which show "Hauling Transfer" in the ASAP program from March 8th, 2010 to July 31st, 2013 and for each such vehicle:

> i)      identify the Vendor that towed the vehicle to IAA; and
>
> ii)     identify the Vendor that performed the "Hauling Transfer".

ANSWER: Objection. This interrogatory is unduly burdensome, insufficiently limited in time and scope, and it seeks information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence.

SUPPLEMENTAL ANSWER: Subject to and without waiving its previous objections and answer to this interrogatory, documents regarding hauling

3

transfers *performed by plaintiff* for IAA's Omaha branch are produced herewith as Bates Nos. IAA00242 -05565.

(Filing No. 93-1, at CM/ECF p. 17) (emphasis added).

REQUEST NO. 5: Without limiting the generality of the foregoing, all files and documents of INSURANCE AUTO AUCTIONS, INC., created or received from January 1, 2010 to September 17, 2013, which refer to, evidence, or relate to anyone or more of the following:

> . . .
>
> f) . . .  2 stop charges, as defined in the Complaint;
>
> . . .
>
> i) . . .  any business transacted between Plaintiff and Defendant at any time within the past 5 years;
>
> . . .
>
> k) . . . all tow bills from Defendant to Plaintiff from January 1, 2010 to September 17, 2013.

RESPONSE: Objection. This Request and its subparts are overbroad, vague, ambiguous, and unduly burdensome with respect to the term "relate to." Defendant further objects because this Request and its subparts seek information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this Request and its subparts seek information protected from disclosure under the attorney-client privilege and/or work product doctrine. Subject to and without waiving said objections, see[1]

> a)  March 8, 2010 Towing Services Agreement between Jackson Harmon Enterprises, LLC, OBA: Midwest Towing and IAA. (Bates Nos. IAA00001-IAA00003);
>
> b)  March 8, 2010 IAA/Tower Service Level Agreement {Bates Nos. IAA00004-IAA00008);

---

[1]Based on the court's review, the defendant's alphabetic listing of documents provided is not intended to correspond to the alphabetic listing of the plaintiff's requests; for example, response "k)" is not answering request "k).'

4

c)      Exhibit A to the March 8, 2010 Towing Services Agreement between Jackson Harmon Enterprises, LLC, OBA: Midwest Towing and IAA. (Bates No. IAA00008);

d)      Amended Exhibit A to the March 8, 2010 Towing Services Agreement between Jackson Harmon Enterprises, LLC, OBA: Midwest Towing and IAA, effective October 1, 2012. (Bates No IAA00010);

e)      June 28, 2013 Notice of Termination (Bates Nos. IAA00011-IAA00012);

f)      Tow bills for Seconds Stops paid by Omaha Branch for 2009-2014 (Bates Nos. Bates Nos. IAA00013-IAA00072);

g)      April 13, 2011 letter regarding Midwest Towing from Capitol Towing, Inc. (Bates Nos. IAA00073);

h)      Spreadsheets regarding lot to lot transfers for Midwest Towing (Bates Nos. IAA0007 4-IAA00127);

i)      KPI Tower Efficiency Reports for Midwest Towing through October 24, 2013(Bates Nos. IAA00128-IAA00131 );

j)      Spreadsheet regarding payments made to Midwest Towing from January 2010 to August 2013 (Bates Nos. IAA00132-IAA00157);

l)      Real Estate Abstracts for Omaha lots. To be produced upon entry of a protective order;

m)      Lease documents for Omaha lots. To be produced upon entry of a protective order.

n)      Email communications between the parties (Bates Nos. IAA00158-00208)

Discovery continues.

SUPPLEMENTAL RESPONSE: Subject to and without waiving its previous objections and answer to this Request, see the following attached hereto:

o)      IAA Request For Proposal standard form (Bates Nos. IAA00209-00211 );

p)      Documents supplied by Midwest in support of its Proposal (Bates Nos. IAA00212-00224 );

q)      IAA Implementation checklist executed by the parties on March 15, 2010 (Bates No. IAA00225);

r)      Email communications regarding Midwest Towing (Bates Nos. IAA 00226-00241 ). These contain redactions of forwarding information to attorney for defendant.

Discovery continues.


REQUEST NO. 6: Without limiting the foregoing, all Documents of record evidencing, referring or relating to:

i)      the stock number of all vehicles in the ASAP program from March 8, 2010 to July 30, 2013, described as "Hauling Transfer";

ii)     the vendor that towed each vehicle identified in subparagraph i to IAA; and

iii)    the vendor that performed the "Hauling Transfer" for each vehicle identified in subparagraph i to IAA.

RESPONSE: Objection. This Request and its subparts are overbroad, unduly burdensome, and it seeks information that is irrelevant and, therefore, not reasonably calculated to lead to the discovery of admissible evidence.

SUPPLEMENTAL RESPONSE: Subject to and without waiving its previous objections and answer to this Request, documents regarding hauling transfers *performed by plaintiff* for IAA's Omaha branch are produced herewith as Bates Nos. IAA00242 -05565.

(Filing No. 93-1, at CM/ECF pp. 27-30) (emphasis added).


On April 30, 2014, the parties conferred to discuss their discovery disputes. During that call, they agreed to attempt to supplement their respective discovery responses with the hope of reducing the disputes raised by motions to compel. To facilitate these ongoing efforts, at the parties' joint request, (Filing No. 22), the deadline for filing motions to compel was extended to June 16, 2014. (Filing No. 23).[2]  By order

_____

[2] In its brief in support of the current motion to compel, Plaintiff's counsel argues this court's initial May 1, 2014 deadline for filing motions to compel was "highly problematic." (Filing No. 81, at CM/ECF p. 22). The problems described in Plaintiff's brief should have been remedied by the court's order extending the motion to compel deadline by 45 days.

dated July 1, 2014, the deposition deadline was extended to August 15, 2014.  ([Filing No. 53](#)).

The plaintiff's first motion to compel was timely filed on May 19, 2014,  ([Filing No. 28](#)), and the defendant's motion for protective order was filed on May 23, 2014. ([Filing No. 32](#)).  After response continuances were granted at the parties' request, these motions were fully submitted on July 10, 2014.  ([Filing No. 63](#)).  The court's order on this first round of discovery motions was entered on August 4, 2014.  ([Filing No. 67](#)).

After conferring with the parties on August 26, 2014, the court amended the progression schedule, continuing the trial, pretrial motion, and summary judgment deadlines at the parties' request.  The parties did not request a continuance of any other progression deadline, including the deposition deadline or the deadline for filing motions to compel.  Those deadlines were not extended.  ([Filing No. 75](#)).

The plaintiff's pending motion to compel was filed on September 26, 2014. ([Filing No. 78](#)); the defendant's motion for protective order was filed on October 14, 2014. ([Filing No. 94](#)).

2.    <u>Plaintiff's motion to compel</u>.

The plaintiff's motion to compel requests an order requiring the defendant to produce:

- Every document reflecting the plaintiff's delivery of vehicles, trailers, campers etc. to the outlying lots of the defendant's Omaha branch; ([Filing No. 78, at CM/ECF p. 7](#), ¶ 5);

- The complete listing of all hauling transfer fees (a fee for hauling a vehicle or trailer from one IAA location in Omaha to another IAA location in Omaha) paid to Driggers, or any other tower; ([Filing No. 78, at CM/ECF p. 7](#), ¶ 7);

- A complete record stating the location of all vehicles and trailers for which a tow bill was issued to Midwest ("Location Document");   (Filing No. 78, at CM/ECF p. 8, ¶ 8);

- A 30(b)(6) deposition relating to the deliveries of vehicles and trailers that Midwest made to outlying lots; ((Filing No. 78, at CM/ECF p. 7, ¶ 6); and

- Selected excerpts from the IAA Salvage Book; (Filing No. 78, at CM/ECF p. 6, ¶ 4).

The plaintiff claims it must have the above information to determine the correct and total number of vehicles Midwest delivered to outlying lots that involve an additional stop for which a $25.00 fee is payable, and to refute the defendant's claim that the plaintiff's damage calculations are incorrect.   (Filing No. 78, at CM/ECF p. 8).   The defendant claims the plaintiff's motion is untimely and the plaintiff has failed to show due diligence in attempting to comply with the court's deadline for filing a motion to compel.   The defendant also argues the information now requested was not within the scope of the plaintiff's discovery requests, it is not relevant to the issues presented in this litigation, and the plaintiff cannot show that failing to reopen discovery will be prejudicial to the plaintiff's claims.   Finally, to the extent the discovery requests could be interpreted to include the plaintiff's current document production demands, the defendant stands on its prior objections, as stated in response to the discovery requests and in correspondence thereafter, that the plaintiff's requests are irrelevant and compliance would be unduly burdensome.

Hauling Transfer and Location Records

The plaintiff demands production of documents showing plaintiff's delivery of vehicles, trailers, campers etc. to Omaha's outlying lots, all hauling transfer fees paid to any tower, and the location of all vehicles and trailers for which a tow bill was issued to Midwest ("Location Document").  By doing so, the plaintiff is requesting records to identify every "hauling transfer;"  the movement of a vehicle or trailer initially delivered to an outlying lot and then moved to IAA's 52nd Street lot.   The fee associated with this transfer is a hauling transfer fee.  (Filing No. 80, at CM/ECF p. 4, ¶10).

On July 11, 2014, the plaintiff sent a letter to the defendant requesting, among other things, the documents showing all the deliveries "that Midwest made of vehicles, trailers, campers etc. to lots other than 52nd street during the contract term."  (Filing No. 79-1).  Midwest states that for each tow delivered to an outlying lot, Midwest was required to make a stop in addition to the stops at the pickup point and the stop at the 52nd Lot, (Filing No. 80, at CM/ECF p. 4, ¶ 9),[3] and Midwest is entitled to recover a 2 stop charge for each of these tows.

The plaintiff's July 11 letter did not request information regarding any tower other than Midwest.  Rather, it specifically noted, "All we are interested in is discovery of what vehicles, trailers etc. IAA's records reveal that Midwest hauled during the contract term

---

[3] Under the Tower Service Level Agreement (TSLA), the tower must:

> Tow to IAA, drop vehicle in Drop Zone, leaving 4-foot buffer around vehicle.
> Set the emergency brake and turn the ignition switch to "OFF".
> The completed Tow Bill and shop receipt are brought to IAA Office.
> The Tow Bill blank copy is left in the car or as directed by Branch Manager.
> Key control and title procedures as directed by the Branch Manager.

(Filing No. 80, at CM/ECF p. 10).  The plaintiff claims a 2 stop charge was earned whenever Midwest delivered a vehicle to an outlying IAA lot and was then required to deliver the Tow Bill to the 52nd street lot.

to lots other than 52nd Street." (Filing No. 79-1, at CM/ECF p. 3, n. 1).[4]  The plaintiff claimed the information requested was responsive to Request 5 (f), (i), and (k), which sought information regarding "2 stop charges, as defined in the Complaint;" "any business transacted between Plaintiff and Defendant at any time within the past 5 years;" and "all tow bills from Defendant to Plaintiff from January 1, 2010 to September 17, 2013." (Filing No. 93-1, at CM/ECF pp. 27-28).

On July 24, 2014, the defendant responded:

> We are trying to determine IAA's ability to provide the requested information.  This is a timely process and one that will not be completed by Friday.  Therefore, I hope to have a response to you early next week with respect to some, if not all, of your open requests.  We are working diligently and as that you wait to file your motion to compel until we are able to respond.

(Filing No. 79-2).

The defendant responded on August 11, 2014, noting "the plaintiff's additional requests are outside the scope of Plaintiff's Request for Production of Documents, and . . . were made after the discovery deadline closed." (Filing No. 79-16).  But "in an effort to avoid additional delay and to avoid involving the Court in this process," (Filing No. 79-16, at CM/ECF p. 1), the defendant provided additional information.  However, as to the request for data showing where Midwest delivered vehicles, the defendant responded:

> You have requested that IAA pull together a spreadsheet showing where each car towed by Midwest was delivered.  This is a not a report that is "stock" for IAA and IAA would be required to spend numerous hours to have its employees write a special code to attempt to pull the data.

---

[4] Likewise, on this motion to compel, the plaintiff's brief notes that "Midwest is only seeking production of hauling transfer records for vehicles and trailers that Midwest towed to the Omaha IAA locations," (Filing No. 81, at CM/ECF p. 16, n. 10), a note that appears at odds with Plaintiff's demand for production of all hauling transfer fees paid to Driggers.

Additionally, such information is admittedly not needed by Midwest as evidenced by the testimony of Jeff Jackson, the 30(b)(6) witness for Midwest. Mr. Jackson testified that prior to Midwest's termination from the IAA and its ASAP system, either he or one of his staff reviewed the tow bills, photos, expenses entries, and lot notations for all of the 8,994 tows for which Midwest is claiming a 2 Stop fee. This was done for the purpose of confirming that each such tow was made to either the IAA lots at 35th or 60th Street. Mr. Jackson further testified that the data which Midwest compiled is accurate. Finally, discovery closed in this case on May 15, 2014, and this request falls outside the scope of Plaintiffs discovery requests. Therefore, it is IAA's position that not only is Midwest's request unduly burdensome and outside the scope of Plaintiffs discovery requests, but Midwest, admittedly, has no need for this additional data.

(Filing No. 79-16).

Upon receipt of the defendant's August 11, 2014 correspondence, Plaintiff's counsel demanded that IAA supplement its previous production by disclosing not only the hauling transfer fees paid to Midwest, but also all hauling transfer fees paid to Driggers and RO Towing. (Filing No. 79, at CM/ECF p. 4; Filing No. 79-4, at CM/ECF p. 2). As to Driggers, on August 22, 2014, defense counsel provided an excel spreadsheet (the "Driggers Spreadsheet") which detailed hauling transfer data for the 8,994 vehicles that Midwest previously identified as involving an additional stop. (Filing No. 79, at CM/ECF p. 6, ¶ 12)(Filing No. 79-11), Filing No. 79-14; (Filing No. 93-1, at CM/ECF p. 2, ¶ 9). The defendant explained that although the plaintiff's request was made "long past the deadline for the close of discovery," (Filing No. 92, at CM/ECF p. 4, ¶ 7), the defendant was producing the information to facilitate the parties' efforts at reaching a trial stipulation regarding the number of vehicles at issue. (Filing No. 93-1, at CM/ECF pp. 36-37). For similar reasons, on August 25, 2014, the defendant provided Plaintiff with a document entitled "location of stock numbers at issue" which contained movement information for the 8,994 stock numbers at issue. (Filing No. 93-1, at CM/ECF p. 3, ¶11). (Filing No. 79, at CM/ECF p. 7, ¶ 10). ("Location Document). ¶ 11 (Filing No. 92, at CM/ECF p. 10)

On September 3, 2014, the plaintiff again asked for the hauling transfer records by stock number for RO, another tower, and a listing of every vehicle IAA admits was delivered by Midwest to outlying lots.  (Filing No. 79-5).

The defendant responded on September 9, 2014, stating RO hauling records did not exist and as to the list IAA admits were delivered by Midwest to outlying lots, IAA referred the plaintiff to a previously produced document, IAA6278.  (Filing No. 79-6, at CM/ECF p. 2).  Defense counsel added:

> You are long past the deadline to request documents from IAA.  Despite that (and the fact that we believe much of this to be irrelevant to the issues at hand), over the course of this litigation we have spent a great deal of time and money gathering the information you requested.  We will respond one final time.

(Filing No. 79-6, at CM/ECF p. 1).

On September 11, 2014, the plaintiff notified defense counsel that upon review of the Driggers spreadsheet received on August 22, 2014, it was apparent the defendant provided hauling transfer information for only those vehicles already identified by the plaintiff.   The plaintiff demanded a supplemental response, stating:

> The records that were withheld will reveal additional vehicles and trailers that Midwest delivered to outlying lots for which Midwest has a claim.  The RO hauling transfer records must also include all RO hauling transfers, whether or not the vehicles and trailers are included in [Midwest's] master list.

(Filing No. 79-7; Filing No. 79-8).

On the afternoon of September 12, 2014, the defendant refused to provide any further information, explaining:

> Despite the fact that we have had no duty to do so, we have spent a great deal of time and energy since discovery closed in May responding to your one off requests for additional documents.  We have spent significant resources to time and time again respond to requests for documents which you and your clients have always known existed and which should have been made by you during the discovery phase of this litigation.  For this reason, we will not be complying with your untimely request to yet again produce additional documents.

(Filing No. 79-9).

During the evening of September 12, 2014, plaintiff's counsel responded:

> You agreed to produce the [D]riggers hauling records.  Your client deceptively produced only part of the [D]riggers hauling transfer records under the guise of producing all of them.  Now when your client is called out on producing only part of the Drigger's records your client refuses to make a complete production.  You can explain this to the Magistrate Judge.

(Filing No. 79-10).

The following Monday, defense counsel reminded Plaintiff's counsel that IAA had objected to Production Request 6 as overbroad, unduly burdensome and irrelevant, and confirmed that it was standing by this objection.  It explained that the documentation produced was limited to the 8994 vehicles Midwest had identified after meticulous review of its own records,[5] and was provided because plaintiff's counsel stated he wanted to "piece together those specific stock numbers and determine which ones also had charges for "hauling transfers."  (Filing No. 79-11).  And it did so "to avoid seeking the Court's assistance."  (Filing No. 79-11).

---

[5] Midwest testified that it had gone through each tow bill and compared it to the data in ASAP to reach its number of 8,994.  (Filing No. 93-1, at CM/ECF p. 37).

On September 22, 2014, plaintiff's counsel admitted he did not understand all the line items in IAA6278, or the breadth of information contained in that document. He asked defense counsel for assistance. (Filing No. 79-12). IAA6278 was produced in response to plaintiff's discovery requests, and was again referenced in defense counsel's email response to plaintiff's demands on September 9, 2014. (Filing No. 79-6, at CM/ECF p. 2). Defense counsel explained the document to plaintiff's counsel by email on September 24, 2014. (Filing No. 79-13).

     a.     Midwest tow, hauling transfer, and delivery location records.

As to the tow and hauling transfer bills for vehicles towed by Midwest to outlying lots, Interrogatory 13, and Requests 5 and 6 encompassed a demand for this information. But the plaintiff's written discovery did not request all documents showing the delivery location of all vehicles for which a tow bill was issued to Midwest (although such information could likely be gleaned and compiled from reviewing the tow bills and hauling transfer records). Limited to the vehicles Midwest towed or hauled, the crux of the parties' dispute is whether the defendant mislead the plaintiff during the discovery process by restricting its document production to only the tows and hauling transfers for the 8,994 vehicles already identified by the plaintiff. The plaintiff argues it was "lulled" into believing the defendant was disclosing documents for every vehicle tow or hauling transfer performed by the plaintiff. According to the plaintiff, this information is relevant because "Midwest believes that it missed a significant number of deliveries to outlying lots, and that it will be able to correct this error, if IAA is ordered to provide the requested information and documents with respect to all vehicles and trailers for which IAA issued a tow bill to Midwest – not just the vehicles and trailers included in the 8,994 Midwest tally." (Filing No. 81, at CM/ECF p. 27).

The defendant claims it objected to the breadth of the plaintiff's requests from the outset, the motion to compel deadline has passed, and it is far too late in this litigation to now demand further discovery.   In response to the plaintiff's interrogatory 13 and Request 6, which demands that the defendant produce documents and the identity of all vehicles which show "Hauling Transfer" in the ASAP program from March 8th, 2010 to July 31st, 2013, the defendant objected that the discovery requests were overly burdensome and irrelevant.   But while preserving its objections, it supplemented the response in April of 2014 by producing and referring to "documents regarding hauling transfers performed by plaintiff for IAA's Omaha branch."   (Filing No. 93-1, at CM/ECF p. 17) (emphasis added); and disclosed "Spreadsheets regarding lot to lot transfers for Midwest Towing (Bates Nos. IAA0007 4-IAA00127);" and   a "Spreadsheet regarding payments made to Midwest Towing from January 2010 to August 2013 (Bates Nos. IAA00132-IAA00157)."   (Filing No. 93-1, at CM/ECF pp. 27-30) (emphasis added).

The threshold question is whether the plaintiff is entitled to obtain the information requested by filing an untimely motion to compel.   As the defendant correctly argues, the plaintiff was required to act with due diligence and promptly raise discovery issues when it knew or should have known a dispute existed.   As the current motion confirms, a comparison of the records received from IAA and its own records revealed the defendant's production was limited to the 8994 tows already identified by the plaintiff. This information corroborated the plaintiff's own "meticulous" tabulation of "2 stop" tows.   While the plaintiff now states it believes it missed a significant number of deliveries, there is no evidence to support that claim.   And the plaintiff could have compared its records with the records received from IAA in April of 2014, when the defendant's discovery was produced.

The plaintiff's pending motion was untimely filed on September 26, 2014.   The plaintiff has failed to show due diligence in pursuing additional discovery, and has failed

to make any specific showing of prejudice warranted consideration of the plaintiff's untimely motion. The plaintiff's motion to extend the discovery deadline and to compel production of Midwest tow, hauling transfer, and delivery location records will be denied.

      b.     30(b)(6) Deposition

On July 21, 2014, the plaintiff requested a date to depose a IAA 30(b)(6) witness concerning the identification of all vehicles, including stock numbers and delivery locations, for every vehicle Midwest delivered to a location other than IAA's 52nd Street location in Omaha, the identification and location of all documents reflecting this information, and information explaining IAA's ability to compile this information by computer. Plaintiff's counsel demanded a date for deposition "at once" and no later than the end of that week "to avoid another Motion to Compel." (Filing No. 79-1).

> We are trying to determine IAA's ability to provide the requested information. This is a timely process and one that will not be completed by Friday. Therefore, I hope to have a response to you early next week with respect to some, if not all, of your open requests. We are working diligently and ask that you wait to file your motion to compel until we are able to respond.

(Filing No. 79-2). The plaintiff agreed to delay filing a motion to compel pending the defendant's attempt to respond to the request. (Filing No. 79-3).

On September 3, 2014, the plaintiff asked if the defendant intended to dispute that vehicles for which a single hauling transfer fee was paid to Midwest, Driggers or RO were initially delivered by Midwest to one of the outlying lots and then transferred to the 52nd street location for auction, and if it planned to dispute that all State Farm cars were delivered by Midwest to outlying lots after June 29, 2010 up to December 4, 2012. The

plaintiff noted that if the issues are in dispute, the plaintiff "may need to take a 30(b)(6) of IAA to find out the factual basis for these disputes." (Filing No. 79-5).

> The defendant responded on September 9, 2014:
>
> You are long past the deadline to request documents from IAA. Despite that (and the fact that we believe much of this to be irrelevant to the issues at hand), over the course of this litigation we have spent a great deal of time and money gathering the information you requested. We will respond one final time.

(Filing No. 79-6, at CM/ECF p. 1). The defendant confirmed that it did intend to dispute that vehicles for which a single hauling transfer fee was paid to Midwest, Driggers or RO were initially delivered by Midwest to one of the outlying lots, and then were transferred to 52nd street for auction. (Filing No. 79-6, at CM/ECF p. 2).

The plaintiff claims it needs to depose IAA on the complete hauling transfer records, the complete location records, and IAA's contentions regarding these documents in order to determine the correct number of vehicles, trailers, and campers that it delivered to outlying lots and to inquire in to IAA's contentions concerning how these documents support IAA's contentions regarding that number. (Filing No. 81, at CM/ECF pp. 19-20). IAA never designated a deponent on these issues, and did not provide Midwest with a date for the requested deposition prior to the August 15, 2014 deposition deadline. (Filing No. 79, at CM/ECF p. 6, ¶ 11). And the plaintiff has never filed or served a 30(b)(6) Deposition Notice in this litigation for a witness to speak on these topics. (Filing No. 93-1, at CM/ECF p. 4, ¶ 16).

Absent a deposition notice, there is no deposition to compel. Moreover, the topics for which Plaintiff seeks leave to depose the defendant are not new and were known to be potentially relevant when this litigation was filed. The plaintiff's motion to compel the defendant's 30(b)(6) deposition will be denied.

Salvage Book

On July 11, 2014, the plaintiff sent a letter requesting IAA's written procedures for the Omaha Branch. (Filing No. 79-1, at CM/ECF p. 3).   These procedures are documented in the "IAA Salvage Book."

Defense counsel responded on August 11, 2014, stating:

The IAA Salvage Book is a highly confidential book which is irrelevant to the pending litigation and is not responsive to any of your requests. That said, the section entitled "Release/Dispatch/Towing" will be made available for Attorney's Eyes Only. If you would like to schedule a time to come to my offices and review this document, you may.

(Filing No. 79-16).

At the parties' request, a protective order was entered on August 26, 2014 which governed the plaintiff's review and disclosure of the Salvage Book.  (Filing No. 76). Plaintiff's counsel reviewed the book and on August 27, 2014, demanded copies of the following sections:

Request 5 – Section 6: Check-in

Request 6 - Section 11: Lot Management

Request 8 - Section 13: Accounting

Request 9 - Section 19: Remarketing Division (VRD)

Request 10 - Section 23: Specialty Guidelines and Best Practices

Request 11 - Section 3: Provider Customers.

(Filing No. 79, at CM/ECF p. 5, ¶ 9).  The defendant objected, in part, to the requested production on August 28, 2014,  (Filing No. 79-17), and on August 29, 2014, defense counsel sent a proposed amended protective order to the plaintiff which would permit

18

production but limit Plaintiff's further disclosure of the Salvage Book.  (Filing No. 79-11).

On September 12, 2014, the plaintiff asked about the status of an amended protective order.  (Filing No. 79-10).  Plaintiff's counsel was reminded that the proposed protective order was sent two weeks earlier and defense counsel was awaiting the plaintiff's response.  An additional copy was provided.  (Filing No. 79-11).  The parties' attempts to negotiate an Amended Protective Order including an Attorney's Eyes Only provision were unsuccessful.  (Filing No. 93-1, at CM/ECF p. 5, ¶ 19).

 The plaintiff has not identified the discovery request served which would include production of the Salvage Book.  The defendant has submitted evidence that the information within the Salvage Book is highly confidential and proprietary.  That said, the defendant is willing to provide the Salvage Book to Plaintiff's counsel, for  Attorney's Eyes Only, under the terms of a proposed Amended Protective Order.  (Filing No. 96-1). During discussions about the proposed amended protective order, the plaintiff objected to prohibiting the use of the Salvage Book at witness depositions and to the timing and criteria governing destruction of the materials disclosed to Plaintiff's counsel.  (Filing No. 96-1, at CM/ECF pp. 29, 34, & 40-44).

The deposition deadline has passed.  So the dispute over use of the Salvage Book during depositions is moot.  Subject to the notice provisions of paragraph 11, the proposed amended protective order does not prohibit Plaintiff's counsel from using the Salvage Book during trial.  (Filing No. 94-1, at CM/ECF p. 8, ¶ 11).   And the term requiring Plaintiff's counsel to either return or certify destruction of Attorney Eyes Only materials "[w]ithin 20 days after dismissal or entry of final judgment not subject to further appeal" is reasonable.  The defendant's motion for an amended protective order, (Filing No. 94), will be granted.  Moreover, the court specifically finds that the Salvage

Book, including any previously disclosed or produced excerpts from that book, are properly designated Attorney Eyes Only documents for the purposes of the Amended Protective Order to be entered on defendant's motion.

Accordingly,

IT IS ORDERED:

1)      The plaintiff's motion to compel and for extension of the discovery deadlines, (Filing No. 78), is denied.

2)      The defendant's motion for an amended protective order.  (Filing No. 94), is granted.  The amended protective order will be separately entered in accordance with this order.

January 21, 2015.

                                        BY THE COURT:

                                        *s/ Cheryl R. Zwart*
                                        United States Magistrate Judge